Velda CROSS, Plaintiff,

v.

SOUTHWEST RECREATIONAL INDUS-
TRIES, INC., d/b/a Astroturf Manu-
facturing Company, Defendant.

No. Civ.A.4:97CV0118–HLM.

United States District Court,
N.D. Georgia,
Rome Division.

May 8, 1998.

Mary Faye McCord, Office of Mary F. McCord, Cartersville, GA, for Plaintiff.

Christopher Harper Steger, Jeffrey S. Norwood, Kelly L. Weston, Miller & Martin, Chattanooga, TN, for Defendant.

## *ORDER*

HAROLD L. MURPHY, District Judge.

This is an employment discrimination case in which Plaintiff claims that Defendant discriminated against her .on the basis of her gender and that Defendant violated the Family Medical Leave Act ("FMLA"), *codified at* 29 U.S.C.A. § 2601 *et. seq.* The case is before the Court on Defendant's Motion for Summary Judgment [11–1].

## I. Background

Defendant is a corporation organized under the laws of Texas that operates a manufacturing plant located in Whitfield County, Georgia. Plaintiff began working for Defendant in 1989 in its Whitfield County plant as a "creeler." (Aff. of Pl. ¶ 2.) In 1995, Bruce Layman, Defendant's Plant Manager, promoted Plaintiff to the position of Statistical Process Control Coordinator ("SPCC"). (Aff. of Bruce Layman ¶ 4.) Plaintiff's new SPCC position consisted of implementing the

Statistical Process Control ("SPC") system, developing charting systems, training supervisors and operators in the SPC system, reviewing SPC charts, and supervising the people who were assigned to measure processes and construct charts. (Dep. of Bruce Layman at 19–20.)

Layman, at the time he promoted Plaintiff, told Plaintiff that her new SPCC position was permanent. (Pl.Aff.¶ 11.) Layman intended to implement the SPC process throughout all departments in Defendant's Whitfield County plant. (Layman Dep. at 10–12.)

In July or August 1995, Pat Gorham, Plaintiff's supervisor, yelled and cursed at Plaintiff. (Dep. of Pl. at 137–140.) After Plaintiff threatened to tell the Plant Manager about Gorham's conduct, Gorham told Plaintiff that he would fire her if she did so. (*Id.*) In addition, Gorham insulted Plaintiff by remarking that Plaintiff's hormones were out of balance because she was pregnant. (Layman Dep. at 57–59.) Gorham often made such gender-related insults toward women. (Pl.Aff.¶ 14.)

On October 1, 1995, Plaintiff commenced family leave due to the birth of her child in accordance with the FMLA. (Pl.Dep. at 115–16.) Approximately one week prior to Plaintiff's return to work, Defendant notified Plaintiff that her SPCC position was eliminated and Plaintiff would have to return as a creeler. (Pl.Aff. ¶¶ 15, 20–22; Pl.'s Resp. Def.'s Mot.Summ.J.Ex. 4; Layman Aff. ¶ 17.) Plaintiff protested Defendant's decision to eliminate her job while she was on family leave both verbally and in writing. (Pl.'s Resp. Def.'s Mot.Summ.J.Ex. 4.) Defendant nonetheless forced Plaintiff to work as a creeler when she returned. (Layman Aff. ¶ 15.) Plaintiff, however, had arranged for child care during the hours that are required for the SPCC position, and she was unable to change the arrangements to accommodate the hours required by the creeler position. Plaintiff thus resigned her employment with Defendant a week after returning from her family leave. (Pl.'s Resp. Def.'s Mot. Summ.J.Ex. 4.)

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and, on January 31, 1997, the EEOC issued a right-to-sue letter to Plaintiff. On April 30, 1997, Plaintiff sued Defendant, alleging that Defendant's conduct violated the FMLA, constituted pregnancy discrimination, constituted FMLA retaliation, violated the Equal Pay Act, 29 U.S.C.A. § 206(d), and constituted constructive discharge. On January 6, 1998, Defendant filed the instant Motion for Summary Judgment. On January 28, 1998, Plaintiff filed a response to Defendant's Motion as well as a voluntary dismissal of the Equal Pay Act claim.

## II. Discussion

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." A district court "can only grant summary judgment 'if *everything* in the record ... demonstrates that no genuine issue of material fact exists.'" *Tippens v. Celotex Corp.,* 805 F.2d 949, 952 (11th Cir. 1986) (quoting *Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406, 410 (5th Cir.1980)).

It has long been established that the party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Bingham, Ltd. v. United States,* 724 F.2d 921, 924 (11th Cir.1984). The moving party's burden is discharged by " 'showing'—that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In assessing whether the movant has met this burden, the district court must view the evidence and all factual inferences in the

light most favorable to the party opposing the motion. *Reynolds v. Bridgestone/Firestone, Inc.,* 989 F.2d 465, 469 (11th Cir.1993). Once the moving party has supported its motion adequately, the nonmovant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When considering motions for summary judgment, the court does not make decisions as to the merits of disputed factual issues. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ryder Int'l Corp. v. First American Nat'l Bank,* 943 F.2d 1521, 1523 (11th Cir. 1991). Rather, the court only determines whether there are genuine issues of *material* fact to be tried. Applicable substantive law identifies those facts that are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 ("[I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."). Disputed facts which do not resolve or affect the outcome of a suit will not properly preclude the entry of summary judgment because such facts are not material. *Id.*

In addition to materiality, courts also must consider the genuineness of the alleged dispute. "[S]ummary judgment will not lie if the dispute about a material fact is '*genuine.*'" *Id.* (emphasis added). A dispute is genuine "if the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Moreover, for factual issues to be genuine, they must have a real basis in the record. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348 (quoting *First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). "[T]his standard mirrors the standard for a directed verdict." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. "[T]he inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

### B. Summary Judgment in Employment Discrimination Cases

The Eleventh Circuit has stated that "[i]n general, summary judgment is an inappropriate tool for resolving claims of employment discrimination." *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595 (11th Cir.1987); *Hairston v. Gainesville Sun,* 9 F.3d 913, 921 (11th Cir.1993) ("the grant of summary judgment, though appropriate when evidence of discriminatory intent is totally lacking, is generally unsuitable in Title VII cases in which plaintiff has established a prima facie case"). Other decisions, however, have weakened this broad proposition, concluding that "despite the general presumption against using summary judgment to resolve the largely factual questions concerning discriminatory intent, it is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted." *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991); *see also Howard v. BP Oil Co., Inc.,* 32 F.3d 520, 525 (11th Cir.1994).

Consequently, the essential inquiry for courts considering summary judgment in employment discrimination cases is whether the plaintiff has produced "sufficient evidence to support an inference that defendant employer based its employment decision on an illegal criterion." *Jameson v. Arrow Co.,* 75 F.3d 1528, 1531 (11th Cir.1996) "The function of the court ... is to determine whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *Id.* at 1531 n. 1 (quoting *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203–04 (2d Cir.1995)).

## C. Plaintiff's Family Medical Leave Act Claims

### 1. Summary of the FMLA Provisions

■ As pertinent here, the Family Medical Leave Act entitles an eligible employee to twelve workweeks of leave during any twelve month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the [employee's] position," such as a pregnancy and birth of a child. 29 U.S.C.A. § 2612(a)(1)(D). The law also entitles the employee, upon completion of the leave, to be restored to the position of employment that the employee held when the leave commenced, or to its equivalent. 29 U.S.C.A. § 2614(a). These FMLA requirements are prescriptive mandates as they require the employer to take affirmative steps in order to satisfy the statute. *Peters v. Community Action Committee, Inc. of Chambers–Tallapoosa–Coosa,* 977 F.Supp. 1428, 1432 (M.D.Ala.1997). In other words, the FMLA requires the employer to provide certain entitlements to the employee. Id. The FMLA further makes it unlawful for any employer to interfere with, restrain, or deny the exercise of these rights. 29 U.S.C. § 2615. Finally, the FMLA authorizes employees to bring civil actions to recover damages, or to obtain equitable relief, against an employer who violates the Act. 29 U.S.C.A. § 2617(a). *Paasch v. City of Safety Harbor,* 915 F.Supp. 315, 320 (M.D.Fla.1995).

The types of claims that may be brought under the FMLA can be divided into two categories. First, an employee can bring claims that an employer retaliated or discriminated against her because she used her FMLA leave under § 2615(a)(2). Second, an employee can assert claims that the employer refused to provide a FMLA benefit to which the employee was entitled under § 2615(a)(1). Section 2615(a)(2) claims, by definition, require that the employee prove that the employer acted with discriminatory or retaliatory intent. Section 2615(a)(1) claims, on the other hand, do not require that an employee prove that the employer acted with any particular intent—a mere showing

that the employee was entitled to the benefit and the employer refused to provide it suffices to establish liability under the FMLA.

■ The FMLA thus imposes strict liability upon employers who deny a FMLA entitlement to a qualified employee. 29 U.S.C.A. § 2615(a)(1); *Kaylor v. Fannin Regional Hosp., Inc.,* 946 F.Supp. 988, 997 (N.D.Ga. 1996) (opining that the FMLA creates strict liability for denial of statutory rights). FMLA's plain language dictates that employers must provide certain benefits. *See* § 2612(a)(1) ("an eligible employee shall be entitled to a total of 12 workweeks of leave"); § 2614(a)(1) ("any eligible employee who takes leave under section 2612 ... shall be entitled [to reinstatement to the same or an equivalent position]"). Furthermore, Congress used the words "shall be unlawful for an employer to [deny an employee's rights under the FMLA]" rather than the words "may be unlawful to [to deny an employee's rights under the FMLA]," which indicates that Congress intended to hold employers strictly liable for denying FMLA provided rights to employees. § 2615(a)(1); *Kaylor,* 946 F.Supp. at 997 (N.D.Ga.1996) (deducing that Congress used words "shall be unlawful" in § 2615(a)(1) in order to create strict liability for denial of statutory rights); *see also Escondido Mut. Water Co. v. La Jolla Indians,* 466 U.S. 765, 772, 104 S.Ct. 2105, 80 L.Ed.2d 753 (1984) (interpreting word "shall" to mean mandatory). Congress also omitted any language referring to the employer's intent with respect to violating § 2615(a)(1), providing further evidence that the employer's intent is irrelevant to an inquiry about whether the employer violated the FMLA. *Compare* Title VII, 42 U.S.C.A. § 2000e–2 (stating that an employment practice is unlawful only if the employer discriminates against an individual because of the individual's race, color, religion, sex, or national origin), *with* § 2615(a)(1) (omitting any reference to employer's intent).

Additionally, when read as a whole, the FMLA indicates that Congress intended to hold employers strictly liable for denying

rights provided by the FMLA. *See King v. St. Vincent's Hospital,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (directing courts to read statutes as a whole); *Kaylor,* 946 F.Supp. at 996 (reading the FMLA as a whole and concluding that strict liability standard applies to § 2615(a)(1)). For instance, Congress made provisions for employers who unintentionally violate the FMLA, permitting such "good faith" violators to be liable only for actual damages. 29 U.S.C.A. § 2617.

Finally, the FMLA's legislative history further supports the conclusion that the FMLA imposes strict liability upon an employer who denies a FMLA entitlement to a qualified employee. *Kaylor,* 946 F.Supp. at 996. Congress enacted the FMLA as a successor to the federal labor laws that establish minimum standards for employment. "The [FMLA] is based upon the same principle as the child labor laws, the minimum wage, Social Security, the safety and health laws, the pension and welfare benefit laws, and other labor laws that establish minimum standards of employment." S.Rep. No. 103-3, at 6 (1993), *reprinted in* 1993 U.S.C.C.A.N. 7. Just as an employer's intent is irrelevant with respect to its failure to meet the minimum standards imposed by these federal labor laws, an employer's intent is irrelevant with respect to failing to meet the minimum standards imposed by the FMLA. *See* Mark Rothstein, et al., *Employment Law,* § 4 (West 1994) (describing how employers may be civilly liable for unintentionally violating federal labor laws).

■■■■ Because the FMLA imposes strict liability upon an employer who denies FMLA benefits to a qualified employee, a plaintiff pursuing such a claim need only prove that the employer violated the statute and need not prove that the employer did so with any particular intent. *Kaylor,* 946 F.Supp. at 997; § 2615(a)(1). Courts therefore are not required to apply the traditional employment discrimination law analytical frameworks announced in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (direct evidence cases), and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (circumstantial evidence cases). Indeed, in order to succeed on a claim that an employer denied a FMLA benefit under § 2615(a)(1), a plaintiff simply must prove that she was entitled to the benefit under the statute and the employer denied the benefit.

The Court recognizes that at least one district court in this circuit has applied the *McDonnell Douglas* analysis to a claim that an employer failed to reinstate an employee after she returned from FMLA leave. *Dollar v. Shoney's Inc.,* 981 F.Supp. 1417, 1419 (N.D.Ala.1997) ("Accordingly, the familiar three-step framework developed by the Supreme Court for focusing the inquiry into an employer's allegedly discriminatory motives will be utilized."). The Court respectfully believes that this is an erroneous application of the *McDonnell Douglas* analysis because, as discussed above, the employer's intent is irrelevant when examining a claim under § 2615(a)(1). A *McDonnell Douglas* burden-shifting analysis that is designed to determine the employer's intent thus is improper.

The Court observes, however, that the FMLA provides employers with potential defenses to § 2615(a)(1) claims. For instance, the FMLA imposes limitations on an employee's right to be reinstated after the employee completes her FMLA leave. § 2614(a)(3). Notably, an employee entitled to reinstatement is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave." § 2614(a)(3)(B). The United States Department of Labor interprets this section as permitting an employer to deny reinstatement to an employee when the employer can prove that the employer would have laid the employee off even if the employee had not taken leave. 29 C.F.R. § 825.216(a)(1997). This is known as the "position-elimination defense." *See* Victoria Riede, Comment, *Employer Discrimination*

*on the Basis of Pregnancy: Righting the Power Imbalance,* 27 Golden Gate U.L.Rev. 223, 240 (1997) (describing position-elimination defense).

■ The Court believes that because the FMLA text and the United States Department of Labor regulations place the burden upon the employer to prove this defense, the employer's burden includes both the burden of production and the burden of persuasion. In a *McDonnell Douglas* analysis, on the other hand, the employer only has the burden of production with respect to a showing a legitimate nondiscriminatory reason to justify its actions. The employer's burden in asserting a position-elimination defense is thus much greater than an employer's burden in the *McDonnell Douglas* analysis because the employer has both the burden of production and persuasion with respect to showing that it would have eliminated the position even if the employee had not taken FMLA leave.

The Court observes that placing the burden of production and persuasion on the employer with respect to affirmative defenses is not unique in the context of employment law. For instance, in the context of the National Labor Relations Act, 29 U.S.C.A. § 160(c), the burden of persuasion frequently is placed upon employers to prove affirmative defenses. *E.g. Maher Terminals, Inc. v. Director, Office Workers Comp.,* 992 F.2d 1277, 1282–84 (3d Cir.1993) (discussing placing burden of persuasion upon employers with respect to affirmative defenses under NLRA). Perhaps even more analogous, under both Title VII and the Equal Pay Act, an employer is prohibited from paying women less than men for performing the same work. 29 U.S.C.A. § 206(d); 42 U.S.C.A. § 2000e(2); *Kouba v. Allstate Ins. Co.,* 691 F.2d 873, 875 (1982). Once an employee proves that she was paid

less than her male counterparts for performing the same work, she has established a prima facie case under both the Equal Pay Act and Title VII. *Kouba,* 691 F.2d at 875. The employer then has the burden of persuasion to prove that the difference in pay is due to a "factor other than sex." *Id.* Similarly, the burden of persuasion belongs upon the employer with respect to proving an affirmative defense under the FMLA.

With this law in mind, the Court now turns to Plaintiff's first FMLA claim.

### 2. Plaintiff's § 2615(a)(1) Claim

■ Plaintiff asserts a claim under § 2615(a)(1) that Defendant violated the FMLA by refusing to reinstate Plaintiff to her SPCC position after she returned from family leave. The unrebutted evidence shows that Plaintiff was entitled to leave under the FMLA after the birth of her baby. Additionally, the unrebutted evidence shows that Defendant did not reinstate Plaintiff to Plaintiff's SPCC position or its equivalent.[1] Plaintiff thus has established that she was entitled to leave under § 2612(a), and that Defendant denied this benefit. The resolution of Plaintiff's claim will turn on whether Defendant's asserted defense, the position-elimination defense, has merit.

Defendant argues that it eliminated Plaintiff's SPCC position because it was a temporary position and Plaintiff had completed all of the required tasks. Defendant's argument, however, conflicts with the evidence in the record. Plaintiff's unrebutted testimony is that Layman told Plaintiff that the SPCC position was intended to be permanent. (Pl. Aff.¶ 11.) Plaintiff's testimony is supported by Layman's testimony that the SPC process was originally to be instituted within all departments in Defendant's Whitfield County plant. (Layman Dep. at 10, 12.) Yet, at the

---

**1.** The Court does not interpret Defendant's brief as arguing that the creeler position constituted an "equivalent" position under § 2614(a). To the extent that Defendant proffers such an argument, however, the Court briefly addresses this issue. An "equivalent position" must have the same or substantially similar duties and responsibilities, skill requirements, and authority as an employee's existing position. 29 C.F.R. § 825.215(a) (1997). The unrebutted evidence shows that the creeler position involves dissimilar responsibilities, duties, skill requirements and authority from Plaintiff's SPCC position. The Court therefore concludes that the two positions are not equivalent as defined by the FMLA.

time that Defendant eliminated Plaintiff's SPCC position, only the extrusion department had implemented the SPC process and none of the other departments had implemented the SPC process. (Layman Aff. ¶ 6.) Based on this evidence, the Court concludes that a reasonable factfinder could conclude that Plaintiff's SPCC position was permanent, or, at least that her SPC-related duties were not completed, and that it would not have been eliminated if Plaintiff had not taken FMLA leave. Consequently, Defendant is not entitled to summary judgment with respect to Plaintiff's first FMLA claim.

### 3. Plaintiff's § 2615(a)(2) Retaliation Claim

 Plaintiff asserts a FMLA retaliation claim under § 2615(a)(2), alleging that Defendant demoted Plaintiff because Plaintiff took leave pursuant to the FMLA. As previously discussed in section II.C.1., a plaintiff proceeding under § 2615(a)(2) must prove that the employer acted with the requisite retaliatory intent. A plaintiff may prove a claim of retaliation under § 2615(a)(2) through either direct or circumstantial evidence. *Peters v. Community Action Committee, Inc. of Chambers–Tallapoosa–Coosa*, 977 F.Supp. 1428, 1433 (M.D.Ala.1997) ("as with a claim under [Title VII], a plaintiff may prove discrimination and retaliation ... through either direct or circumstantial evidence.") Because Plaintiff attempts to prove her case using circumstantial evidence, the Court must apply the specialized burden-shifting analysis announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), whereby a plaintiff may establish an employment discrimination claim using circumstantial evidence.[2] *Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013, 1018–19 (11th Cir.1994); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir.1984); *see Peters v. Community Action Committee, Inc. of Chambers–Tallapoosa–Coosa*, 977 F.Supp.

1428, 1433–34 (M.D.Ala.1997) (applying *McDonnell Douglas* burden-shifting analysis to FMLA retaliation claim).

The burden-shifting analysis first requires the plaintiff to establish a prima facie case of the defendant's retaliatory motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 2742, 125 L.Ed.2d 407 (1993). After the plaintiff establishes a prima facie case, a presumption of retaliatory intent arises, and the burden of production next shifts to the defendant to articulate legitimate, nondiscriminatory reasons for the adverse employment action. *Hicks*, 113 S.Ct. at 2742; *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Lewis*, 908 F.Supp. at 951. Once the defendant articulates legitimate, nondiscriminatory reasons for its actions, "'the presumption created by plaintiff's prima facie case drops from the picture' and 'the factual inquiry proceeds to a new level of specificity.'" *Combs*, 106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 255 & n. 10, 101 S.Ct. 1089); *see also Trotter v. Board of Trustees of Univ. of Ala.*, 91 F.3d 1449, 1455 (11th Cir.1996) (describing third step of burden-shifting analysis). "[T]he plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs*, 106 F.3d at 1520.

### a. Plaintiff's Prima Facie Case

In order to establish a prima facie case of FMLA retaliation, Plaintiff must show that: (1) Plaintiff exercised her rights guaranteed by the FMLA; (2) Plaintiff was subjected to an adverse employment action; and (3) a causal link exists between the previous two elements. *Fleming v. Boeing Co.*, 120 F.3d 242, 248 (11th Cir.1997); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1325 (10th Cir.1997); *Peters*, 977 F.Supp. at 1435.

**2.** Plaintiff argues that she has proffered direct evidence of retaliation. The Court rejects Plaintiff's argument because Plaintiff has not proffered evidence that "is sufficient to prove [retali-ation] without inference or presumption." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir.1993).

Although Defendant disingenuously argues to the contrary, Plaintiff clearly satisfies the first two elements. The record conclusively demonstrates that Plaintiff was entitled to FMLA leave, that she exercised that leave, and that approximately two weeks before Plaintiff was scheduled to return to work, Defendant decided to eliminate Plaintiff's SPCC position. Plaintiff's prima facie case of FMLA retaliation thus turns on whether Plaintiff has established a causal link between her exercise of her FMLA rights and Defendant's decision to demote her.

Under Eleventh Circuit law, the "causal link requirement [is interpreted] broadly; 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Coutu v. Martin County Board of County Commissioners*, 47 F.3d 1068, 1074 (11th Cir.1995) (quoting *EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571–72 (11th Cir.1993)). Defendant concedes that a close temporal connection exists between Plaintiff's exercise of her FMLA rights and Defendant's decision to demote Plaintiff, but argues that Plaintiff must show more than a temporal connection to establish the causal link. Defendant's argument fails as a matter of law. The Eleventh Circuit has held that close temporal proximity is sufficient to establish an inference of causation. *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir.1986) ("The short period of time, however, between the filing of the discrimination complaint and the plaintiff's discharge belies any assertion by defendant that the plaintiff failed to prove causation"); *Dollar v. Shoney's Inc.*, 981 F.Supp. at 1420 (holding that temporal proximity is sufficient to establish causal link in FMLA case). Plaintiff thus has established a prima facie case of FMLA retaliation.

### b. Defendant's Legitimate Nondiscriminatory Reason

Under the burden-shifting analysis, the burden of production shifts to Defendant to offer a legitimate, nondiscriminatory reason for demoting Plaintiff. *Hicks*, 113 S.Ct. at 2742; *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089; *Lewis*, 908 F.Supp. at 951. Defendant must "clearly articulate in a reasonably specific manner a legitimate non-discriminatory reason" for the adverse action. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) Defendant's burden is one of production, not persuasion. *Combs*, 106 F.3d 1519, 1528 (11th Cir.1997). To satisfy its burden, Defendant must "clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment decision." *Hicks*, 113 S.Ct. at 2746.

Defendant argues that it demoted Plaintiff because her SPCC position was temporary. According to Defendant, Plaintiff had completed the necessary tasks to institute the SPC program, and thus her position was eliminated. Defendant further argues that it did not provide Plaintiff with an equivalent position because none were available for which Plaintiff was qualified. The Court concludes that Defendant has proffered legitimate, nondiscriminatory reasons that satisfy its burden of production.

### c. Whether Defendant's Proffered Reason is a Pretext for FMLA Retaliation

Once the defendant articulates legitimate, nondiscriminatory reasons for its actions, "'the presumption created by plaintiff's prima facie case drops from the picture' and 'the factual inquiry proceeds to a new level of specificity.'" *Combs*, 106 F.3d at 1528 (quoting Burdine, 450 U.S. at 255 & n. 10, 101 S.Ct. 1089); *see also Trotter v. Board of Trustees of Univ. of Ala.*, 91 F.3d 1449, 1455 (11th Cir.1996) (describing third step of burden-shifting analysis). "[T]he plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the em-

ployer were not the real reasons for the adverse employment decision." *Combs,* 106 F.3d at 1520.

■ Plaintiff first argues that Defendant's *reason for* demoting Plaintiff is a pretext for FMLA retaliation because Defendant's reason is not believable. Plaintiff argues that Defendant's reason is not believable because the record demonstrates that Plaintiff's position was actually permanent, her function was not completed when her position was eliminated, the timing of Defendant's decision to eliminate Plaintiff's position is suspicious, and equivalent positions for which she was qualified did exist.

Plaintiff's unrebutted testimony is that Layman told Plaintiff that her SPCC position was intended to be permanent. (Pl.Aff.¶ 11.) Plaintiff's testimony is supported by Layman's testimony that the SPC process was originally to be instituted within all departments in Defendant's Whitfield County plant. (Layman Dep. at 10, 12.) Yet, at the time that Defendant eliminated Plaintiff's SPCC position, only the extrusion department had implemented the SPC process and none of the other departments had done so. (Layman Aff. ¶ 6.) In addition, Gorham decided to eliminate Plaintiff's SPCC position after Plaintiff had been on FMLA leave for approximately ten weeks, and did not notify Plaintiff of her reassignment until approximately one week before Plaintiff was scheduled to return to work. (Layman Dep. Ex. 4 (Gorham Memorandum of Dec. 14, 1995, notifying Layman that Plaintiff's SPCC position is complete); Pl.'s Resp. Def.'s Mot. Summ. J.Ex. 4.) Finally, Plaintiff has identified

twelve job openings for which Plaintiff may have been qualified. (Def.'s Resp. to Pl.'s First Interrog. No. 22.) Plaintiff actually applied for two such positions and Defendant refused to assign Plaintiff to either of the positions. (Pl.Aff.¶ 21.)

Based on this evidence, the Court concludes that a reasonable factfinder could conclude that Defendant's reason for demoting Plaintiff is not believable. This showing alone is sufficient to survive summary judgment. *Combs,* 106 F.3d at 1538.

## D. Plaintiff's Pregnancy Discrimination Claim

Plaintiff asserts a gender discrimination claim, alleging that Defendant demoted Plaintiff because of Plaintiff's pregnancy. A plaintiff may prove a claim for pregnancy discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17, through either direct or circumstantial evidence.[3] Because Plaintiff attempts to prove her case using circumstantial evidence,[4] the Court must apply the specialized burden-shifting analysis announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Meeks v. Computer Assoc. Int'l,* 15 F.3d 1013, 1018–19 (11th Cir. 1994); *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1184 (11th Cir. 1984).

The burden-shifting analysis first requires the plaintiff to establish a prima facie case of the defendant's discriminatory motive. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2742, 125 L.Ed.2d 407 (1993).

3. In 1978, Congress enacted the Pregnancy Discrimination Act (PDA), Section 701(k), amending Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., to address, in the context of pregnancy, Title VII's prohibition of "discriminat[ion] ... because of ... sex...." 42 U.S.C.A. § 2000e–2(a)(1). This section provides that:

The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes, including re-

ceipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work....
42 U.S.C.A. § 2000e(k).

4. Plaintiff argues that she has proffered direct evidence of gender discrimination. The Court rejects Plaintiff's argument because Plaintiff has not proffered evidence that "is sufficient to prove discrimination without inference or presumption." *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1223 (11th Cir.1993).

After the plaintiff establishes a prima facie case, a presumption of discriminatory intent arises, and the burden of production next shifts to the defendant to articulate legitimate, nondiscriminatory reasons for the adverse employment action. *Hicks,* 113 S.Ct. at 2742; *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089; *Lewis v. Zilog,* 908 F.Supp. 931, 951 (N.D.Ga.1995). Once the defendant articulates legitimate, nondiscriminatory reasons for its actions, " 'the presumption created by plaintiff's prima facie case drops from the picture' and 'the factual inquiry proceeds to a new level of specificity.' " *Combs,* 106 F.3d at 1528 (quoting *Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. 1089; *see also Trotter v. Board of Trustees of Univ. of Ala.,* 91 F.3d 1449, 1455 (11th Cir.1996) (describing third step of burden-shifting analysis). "[T]he plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs,* 106 F.3d at 1520.

### 1. Plaintiff's Prima Facie Case

▆ In order to establish a prima facie case of pregnancy discrimination, Plaintiff must show: (1) that she is a member of a protected class or minority; (2) that she was qualified for the position held; (3) that despite her qualifications, she was subjected to an adverse employment decision; and (4) that non-pregnant employees were treated more favorably than she or that she suffered from differential application of work or disciplinary rules. *McDonnell Douglas,* 411 U.S. at 801, 93 S.Ct. 1817; *Armstrong v. Flowers Hospital, Inc.,* 33 F.3d 1308, 1314 (11th Cir. 1994). In other words, Plaintiff must establish that her employer treated her less favorably than other employees because of her sex and/or pregnancy. *See Spina v. Management Recruiters of O'Hare,* 764 F.Supp. 519, 534 (N.D.Ill.1991).

▆ The parties stipulate that Plaintiff satisfies the first three elements because she was pregnant, qualified for her SPCC position, and demoted to the position of creeler. At issue, however, is whether Plaintiff satisfies the last element.

▆ Plaintiff has adduced evidence that she was singled out and demoted. (Layman Dep.Ex. 4, Ex. 5.) Additionally, Plaintiff avers that Pat Gorham, her supervisor, insulted pregnant women in general and Plaintiff in particular. (Pl.Aff. ¶ 14; Layman Dep. at 57–60.) Under Eleventh Circuit law, Plaintiff's evidence that she was singled out for adverse treatment is sufficient to survive summary judgment in a pregnancy discrimination context. *See Byrd v. Lakeshore Hosp.,* 30 F.3d 1380, 1383 (11th Cir.1994) (holding that plaintiff claiming pregnancy discrimination need only show that she was singled out for adverse treatment and need not prove that nonpregnant employees were treated better in order to survive summary judgment). Plaintiff thus has established a prima facie case of pregnancy discrimination.

### 2. Defendant's Legitimate Nondiscriminatory Reason

Under the burden-shifting analysis, the burden of production now shifts to Defendant to offer a legitimate, nondiscriminatory reason for demoting Plaintiff. *Hicks,* 113 S.Ct. at 2742; *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089; *Lewis,* 908 F.Supp. at 951. Defendant must "clearly articulate in a reasonably specific manner a legitimate non-discriminatory reason" for the adverse action. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). Defendant's burden is one of production, not persuasion. *Combs,* 106 F.3d at 1528. To satisfy its burden, Defendant must "clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment decision." *Hicks,* 113 S.Ct. at 2746.

Defendant argues that it demoted Plaintiff because her SPCC position was temporary.

According to Defendant, Plaintiff had completed the necessary tasks to implement the SPC program, and thus her position was eliminated. Defendant further argues that it did not provide Plaintiff with an equivalent position because none were available for which Plaintiff was qualified. The Court concludes that Defendant has proffered legitimate, nondiscriminatory reasons that satisfy its burden of production.

### 3. Whether Defendant's Proffered Reason Is a Pretext for Pregnancy Discrimination

 Once the defendant articulates legitimate, nondiscriminatory reasons for its actions, " 'the presumption created by plaintiff's prima facie case drops from the picture' and 'the factual inquiry proceeds to a new level of specificity.' " *Combs,* 106 F.3d at 1528 (quoting *Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. 1089); *see also Trotter v. Board of Trustees of Univ. of Ala.,* 91 F.3d 1449, 1455 (11th Cir.1996) (describing third step of burden-shifting analysis). "[T]he plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs,* 106 F.3d at 1520; *see also O'Connor,* 116 S.Ct. at 1310 (describing third step of burden-shifting analysis); *Trotter,* 91 F.3d at 1455. Plaintiff argues that Defendant's reason for demoting Plaintiff is a pretext for pregnancy discrimination because: 1) Defendant's reason is not believable; and 2) other circumstantial evidence of discrimination exists.

Plaintiff first argues that Defendant's reason is not believable because the record demonstrates that Plaintiff's position was actually permanent, her function was not completed when her position was eliminated, the timing of Defendant's decision to eliminate Plaintiff's position is suspicious, and equivalent positions for which she was qualified did exist.

Plaintiff's unrebutted testimony is that Layman told Plaintiff that the SPCC position was intended to be permanent. (Pl.Aff. ¶ 11.) Plaintiff's testimony is supported by Layman's testimony that the SPC process was originally to be instituted within all departments in Defendant's Whitfield County plant. (Layman Dep. at 10, 12.) Yet, at the time that Defendant eliminated Plaintiff's SPCC position, only the extrusion department had implemented the SPC process, while none of the other departments had done so. (Layman Aff. ¶ 6.) In addition, Gorham decided to eliminate Plaintiff's SPCC position after Plaintiff had been on FMLA leave for approximately ten weeks, and did not notify Plaintiff of her reassignment until approximately one week before Plaintiff was scheduled to return to work. (Layman Dep.Ex. 4 (Gorham Memorandum of Dec. 14, 1995, notifying Layman that Plaintiff's SPCC position is complete); Pl.'s Resp. Def.'s Mot. Summ.J.Ex. 4.) Finally, Plaintiff has identified twelve job openings for which Plaintiff may have been qualified. (Def.'s Resp. to Pl.'s First Interrog. No. 22.) Plaintiff actually applied for two such positions and Defendant refused to award either of the positions to Plaintiff. (Pl.Aff.¶ 21.)

Based on this evidence, the Court concludes that a reasonable factfinder could conclude that Defendant's reason for demoting Plaintiff is not believable. This showing alone is sufficient to survive summary judgment. *Combs,* 106 F.3d at 1538. Plaintiff nevertheless provides circumstantial evidence of Defendant's discriminatory intent to further support her argument that Defendant's proffered reason for demoting Plaintiff is a pretext for pregnancy discrimination.

The Seventh Circuit has identified three types of circumstantial evidence of intentional discrimination: (1) a mosaic of evidence which, taken together, would permit a jury to infer discriminatory intent; (2) comparative evidence showing that employees similarly situated to the plaintiff but not possessing the protected characteristic received systematically better treatment; and (3) pretext evidence, where the plaintiff is qualified for and fails to receive the desired treatment, and the employer's stated reason for the

difference is unworthy of belief. *Troupe,* 20 F.3d at 736; *see also Hill v. Burrell Communications Group, Inc.,* 67 F.3d 665, 669 (7th Cir.1995).

Plaintiff's evidence falls most comfortably into the first of these three categories: evidence of "suspicious timing, ambiguous statements oral or written, . . . and other bits and pieces from which an inference of discriminatory intent might be drawn." *Troupe,* 20 F.3d at 736.

Using the "mosaic" approach, Plaintiff has created a question of fact whether Defendant's allegation that Plaintiff's SPCC position was temporary is truthful, has demonstrated that the timing of Defendant's decision to terminate Plaintiff's SPCC position is suspicious, and has adduced other statements would support a jury finding of intentional discrimination on the basis of her pregnancy. (Layman Dep. at 57–59 (testifying that Gorham remarked that Plaintiff's hormones were out of balance because she was pregnant).) The Court believes that this evidence, taken together, would permit a rational factfinder to infer discriminatory intent.

Using the "pretext" approach, as mentioned above, Plaintiff showed that Defendant's stated reason for demoting her was a pretext for its action, and that it really made the decision at the time it did only as a smokescreen or excuse for demoting a pregnant employee. For these reasons, the Court concludes that Plaintiff has satisfied her burden of showing that a reasonable juror could conclude that Defendant's proffered reason for demoting Plaintiff is a pretext for pregnancy discrimination and Defendant thus is not entitled to summary judgment on this issue.

### E. Plaintiff's Constructive Discharge Claim

■ To prove constructive discharge, an employee must demonstrate that her working conditions were so intolerable that a reasonable person in her position would be compelled to resign. *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 905 (11th Cir.1988); *Wardwell v. School Board,* 786 F.2d 1554, 1557 (11th Cir.1986); *Bourque v. Powell Electrical Manufacturing Co.,* 617 F.2d 61, 65 (5th Cir.1980); *Young v. Southwestern Savings & Loan Ass'n,* 509 F.2d 140, 144 (5th Cir.1975). Behavior that can be characterized as "merely offensive" is not actionable, but "a tangible psychological injury" on the part of the employee is not required for the employer's behavior to be illegal. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Delph v. Dr. Pepper Bottling Co. of Paragould,* 130 F.3d 349, 354 (8th Cir.1997). The conduct complained of must have been "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive," if the plaintiff is to succeed. *Harris,* 510 U.S. at 21, 114 S.Ct. 367. In addition, "the victim [must] subjectively perceive the environment to be abusive," or the conduct at issue cannot be said to have "actually altered the conditions of the victim's employment, and there is no Title VII violation." *Id.* at 21–22, 114 S.Ct. 367; *see also Delph,* 130 F.3d at 354. Finally, the employer's actions leading to the decision to quit must have been deliberate, that is, they "must have been taken with the intention of forcing the employee to quit." *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir.1981).

■ Given this law, the Court can make short work of Plaintiff's constructive discharge claim. Plaintiff has not alleged any conduct sufficient to create an "objectively hostile or abusive environment." *Harris,* 510 U.S. at 21, 114 S.Ct. 367. At most, Plaintiff alleges that Defendant's act of demoting her to creeler caused Plaintiff's normal working hours to change, which in turn caused Plaintiff to have problems obtaining child care. Although this might have been inconvenient to Plaintiff, it hardly rises to the level of an objectively abusive environment. Consequently, Plaintiff's constructive discharge claim fails as a matter of law and Defendant

is entitled to summary judgment with respect to this claim.

### III. Conclusion

ACCORDINGLY, the Court **DENIES IN PART** Defendant's Motion for Summary Judgment [11–1] with respect to Plaintiff's FMLA claim, Plaintiff's pregnancy discrimination claim, and Plaintiff's FMLA retaliation claim. The Court **GRANTS IN PART** Defendant's Motion for Summary Judgment [11–1] with respect to Plaintiff's constructive discharge claim. The Court amends its Order of February 12, 1998, and ORDERS the Parties to submit their Consolidated Pretrial Order within fifteen days of the date of this Order. This case will be placed on the next available trial calendar. All motions in limine must be filed at least seven days before the trial date.