**Locie J. WALTHALL, Plaintiff,**

v.

**FULTON COUNTY SCHOOL DISTRICT and Annie Duvall, in her individual and official capacities, Defendants.**

**No. CIV.A. 1:96CV–2881–TWT.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 23, 1998.

Harlan Stuart Miller, III, Matthew C. Billips, Kirwan Parks Chesin & Miller, Atlanta, GA, for Plaintiff.

Frank C. Bedinger, III, Hawkins & Parnell, Judith A. O'Brien, Thomas A. Farnen, Sutherland Asbill & Brennan, Atlanta, for Defendants.

## ORDER

THRASH, District Judge.

This is an employment discrimination case arising out of the Plaintiff's demotion from Assistant Principal at one school to classroom teaching responsibilities at a different school. It is before the Court on (1) the Defendants' Motion for Summary Judgment [Doc. No. 22] and (2) the Plaintiff's Motion for Partial Summary Judgment [Doc. No. 24]. For the reasons set forth below, the Defendants' Motion for Summary Judgment should be granted and the Plaintiff's Motion for Partial Summary Judgment should be denied.

## I. FACTS

The Plaintiff began working as a public school teacher in 1966. She was employed by the Fulton County School Board as a teacher in 1970. After a short time as an Assistant Principal, she became a Principal in 1976. In the late 1980s, Fulton County implemented a program of school consolidation which reduced the number of schools from 74 to 48. This resulted in more Principals than there were Principal positions. As part of the school consolidations, Fulton County created the position of "Principal on Special Assignment" in order to avoid reducing the salaries of former Principals who no longer exercised those responsibilities.

The Plaintiff served as Principal at one of the schools that was closed. In 1989, she was reassigned to the position of "Principal, Special Assignment," in which she served as the Assistant Principal at Randolph Elementary School for the 1989–1990 school year. Beginning with the 1990–1991 school year, the Plaintiff was assigned to serve as the Assistant Principal at Oak Knoll Elementary School ("Oak Knoll"). As Assistant Principal, her primary areas of responsibility were

discipline and faculty and staff evaluations. The Principal at Oak Knoll was Jane Wright. Although she was assigned to Oak Knoll, the Plaintiff was supervised by the central office. From 1986–1995, the Plaintiff's supervisors were Dr. Daun Dickie and Defendant Dr. Annie Duvall, Executive Directors for Elementary Schools. Dr. Dickie served as the Plaintiff's supervisor during the 1990–1991 and 1991–1992 school years. Dr. Duvall supervised the Plaintiff at all other relevant times, including the 1994–1995 school year.

The Plaintiff and Oak Knoll Principal Jane Wright were not working well together in the 1994–1995 school year. In early 1995, Dr. Duvall created a Professional Development Plan for the Plaintiff due to deficiencies in her administration of discipline and her poor judgment and insensitivity in dealing with parents and students. Complaints about the Plaintiff continued. On April 26, 1995, Dr. Duvall sent a memorandum to Plaintiff concerning additional acts of poor judgment and insensitivity, in addition to indicating unsatisfactory performance including absenteeism. The Plaintiff was directed to meet with Dr. Duvall on May 10, 1995, to discuss the unsatisfactory evaluation.

On May 3, 1995, Plaintiff did not report for work because she was ill. She had acute sinusitis, anxiety and insomnia. Her anxiety was due to job stress, her illness, and her husband's illness. Her husband had degenerative disk disease in his spine. From May 3, 1995, through the end of the 1994–1995 school year, the Plaintiff was absent from Oak Knoll. In early June, the Plaintiff submitted notes from Drs. William Lambert and Dwight Jones stating that the Plaintiff had been absent from work to care for her husband and that her care would be needed through July 1, 1995. (Plaintiff's Dep., Exh. 21).

On June 16, 1995, the Plaintiff accepted a contract for the 1995–1996 school year. The contract provided that the Plaintiff would be a "Principal on Special Assignment," and

that her salary would be $69,144, which represented an increase of $2,328 over her 1994–1995 annual salary. (Plaintiff's Dep., Exhs. 1 and 2). That day, Oak Knoll Principal Jane Wright wrote a memorandum to Dr. Duvall requesting that the Plaintiff be reassigned from Oak Knoll. (Wright Deposition, Exh. 2). In her memorandum, Principal Wright listed her major concerns about the Plaintiff: (1) being responsible for assigned duties; (2) being a team member; (3) communicating accurately with parents and listening to their concerns; (4) implementing the discipline cycle in a fair and consistent manner; and (5) being absent since May 3, 1995. (*Id*). Dr. Duvall then recommended that the Plaintiff be reassigned.

On June 30, 1995, the Plaintiff was notified that she would be transferred from the position of Assistant Principal at Oak Knoll to that of a classroom teacher of remedial reading at Brookview Elementary School ("Brookview"). On August 1, 1995, the Plaintiff failed to report to her reassigned position. The Plaintiff informed Dr. Duvall that she was retiring and that her resignation letter was in the mail. The resignation letter, dated July 28, 1995, indicated that the Plaintiff was retiring effective July 1, 1995. Her resignation did not become effective until August 31, 1995.

Subsequently, the Plaintiff filed a charge of discrimination with the Equal Opportunity Employment Commission. After receiving a Notice of Right to Sue, the Plaintiff brought this employment discrimination action against the Fulton County School District and Dr. Duvall, in her individual and official capacities. The Plaintiff asserts violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, ("Section 504")[1], and state law claims

---

[1] The Plaintiff also asserted a claim under 42 U.S.C. § 1983 to enforce rights protected under the Rehabilitation Act. (Doc. No. 1, Count III of Plaintiff's Complaint). However, the Eleventh Circuit has held that a plaintiff may not maintain a § 1983 action in lieu of, or in addition to, a cause of action under the Rehabilitation Act "if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act." *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531

predicated upon violations of duties imposed by the FMLA, ADEA, ADA, and Section 504.

The case is before the Court on the Defendants' Motion for Summary Judgment [Doc. No. 22] and the Plaintiff's Motion for Partial Summary Judgment [Doc. No. 24]. In their summary judgment motion, the Defendants contend that the Plaintiff has failed to establish a *prima facie* case of discrimination under either the FMLA, ADA, ADEA, or Section 504. Specifically, the Defendants contend that the Plaintiff cannot establish that she has been subject to an adverse employment action. The Defendants contend, based on the evidence, that the Plaintiff's reassignment was not due to her age, her association with a disabled person, or taking time to care for her husband. The Defendants further contend that the Plaintiff was not constructively discharged. Finally, the Defendants contend that dismissal of the Plaintiff's state law claims are appropriate after summary judgment is granted regarding the federal claims. In her Motion for Partial Summary Judgment, the Plaintiff contends that she is entitled to summary judgment on her FMLA claim because she was not required to request leave under the FMLA to be covered by it and she suffered an adverse action based on her decision to take FMLA leave. She further contends that she is entitled to summary judgment on her state claims because, by violating her FMLA rights, the Defendants violated their duties under O.C.G.A. § 51–1–6 and O.C.G.A. § 51–1–8.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non movant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The (11th Cir.1997). Accordingly, the Defendants

party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. FMLA

The FMLA was enacted into law in 1993. The purposes of the Act include balancing the demands of the workplace with the needs of families, entitling employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition; accomplishing these purposes in a manner that accommodates the legitimate interests of employers; and promoting the goal of equal employment opportunity for women and men. *See* 29 U.S.C. § 2601. The FMLA provides two types of entitlements to FMLA-eligible employees. *See Peters v. Community Action Committee, Inc. of Chambers–Tallapoosa–Coosa*, 977 F.Supp. 1428, 1432 (M.D.Ala. 1997). The first type, 29 U.S.C. §§ 2612 and 2614, confers affirmative entitlements that are essentially prescriptive. Section 2612(a) provides, in pertinent part, that an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period because of a serious health condition that makes the employee unable to work or to care for a spouse with a serious health condition. 29 U.S.C. § 2612(a)(1)(C) and (D). An eligible employee may elect to substitute accrued paid leave for any part of the 12–weeks of leave:

> An eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee for leave provided under subparagraph (C) or (D) of subsec-

are entitled to summary judgment on this claim.

tion (a)(1) of this section for any part of the 12–week period of such leave under such subsection, except that nothing in this subchapter shall require · an employer to provide paid sick leave or paid medical leave in any situation in which such employer would not normally provide any such paid leave.

29 U.S.C. § 2612(d)(2)(A). Section 2614 of the FMLA provides, in pertinent part, that:

Any eligible employee who takes leave under [§ ] 2612 shall be entitled, on return from such leave—(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

29 U.S.C. § 2614(a)(1).

The second type of entitlement, 29 U.S.C. § 2615, bars certain discriminatory conduct and is, therefore, proscriptive. *Peters,* 977 F.Supp. at 1432. This section provides, in pertinent part, that it shall be unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter," or "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(1). The question of the employer's intent becomes relevant in determining whether the employer has taken adverse action against the employee for exercising an FMLA right. *See Peters,* 977 F.Supp. at 1433.

The statute requires an employee to give the employer at least 30 days notice of the need for leave if it is foreseeable based on an expected birth or adoption. Although the statute is silent regarding notice in the case of unforeseeable leave, the FMLA implementing regulations provide, in pertinent part, that:

(a) When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of that particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible. In the case of a medical emergency requiring leave because of an employee's own serious health condition or to care for a family member with a serious health condition, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved. (b) The employee should provide notice to the employer either in person or by telephone, telegraph, facsimile ... machine or other electronic means .... The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means. The employee ... will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

29 C.F.R. § 825.303. The regulations address the issue of whether leave is paid or unpaid as follows:

Generally, FMLA leave is unpaid. However, under the circumstances described in this section, FMLA permits an eligible employee to choose to substitute paid leave for FMLA leave. If an employee does not choose to substitute accrued paid leave, the employer may require the employee to substitute accrued paid leave for FMLA leave.

29 C.F.R. § 825.207(a). Additional FMLA implementing regulations provide that "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice to the employee of the designation." 29 C.F.R. § 825.208(a). An employer not having sufficient information about the employee's reason for taking leave should inquire further to determine whether the paid leave is potentially FMLA-qualifying. *Id.*

In this case, the Plaintiff and Defendants have each moved for summary judgment as

to whether the Defendants intentionally discriminated against her for using FMLA leave. The Plaintiff's claim pursuant to the FMLA must fail for two reasons. First, the Plaintiff cannot meet her burden of showing that she exercised her rights under the FMLA. The Plaintiff bears the burden of showing by a preponderance of the evidence that the taking of FMLA leave was a determinative factor in the employment decision at issue. *Kaylor v. Fannin Regional Hosp., Inc.*, 946 F.Supp. 988, 1000 (N.D.Ga.1996); *see also Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1226 (11th Cir.1993) (plaintiff has burden in ADEA case). It is undisputed that the Plaintiff was absent from May 3, 1995, to the end of the school year. She was absent from May 3, 1995 through May 14, 1995, due to her own illness, and, thereafter, due to the illness of her husband and the necessity for her to care for him. During this absence, the Plaintiff was paid pursuant to the official Fulton County Board of Education sick leave policy. On May 25, 1995, the Plaintiff's supervisor wrote to her and specifically stated that her absence would be covered by the Board's sick leave policy provided that the Plaintiff submitted certain requested documentation. The Defendants did not, at any time, require the Plaintiff to substitute paid sick leave for FMLA leave. The Plaintiff did not, at any time, exercise her right to elect to substitute paid sick leave for FMLA leave. Having elected to take paid sick leave, the Plaintiff may not now claim that she was taking FMLA leave in order to state a claim for damages against her former employer.

The parties have not cited and the Court has not found controlling authority precisely on point. However, the case law that does exist generally supports the conclusion reached by the Court. In *Gay v. Gilman Paper Co.*, 125 F.3d 1432 (11th Cir.1997), the plaintiff's husband told her employer that the plaintiff was in the hospital for some tests when in fact she had been hospitalized for a nervous breakdown. The court held that under these circumstances, the employer "could not reasonably be expected to conclude that [plaintiff's] absence might have qualified for treatment under the FMLA." *Id.* at 1436. In other words, there is some threshold notice that must be given to the employer before a claim can be made for a violation of the FMLA. In this case, the information given to the employer was sufficient for it to conclude that Plaintiff's absence might have qualified for treatment under the FMLA, but was entirely inconsistent with an election by the Plaintiff to take unpaid FMLA leave or paid leave that would count as FMLA leave. When the Defendants designated the Plaintiff's leave as paid sick leave, the Plaintiff did nothing to put them on notice that she sought FMLA leave instead.

In *Price v. City of Fort Wayne*, 117 F.3d 1022 (7th Cir.1997), the Seventh Circuit observed that the goal of the FMLA was not to supplant employer-established sick leave and personal leave policies. However, it went on to reject the employer's argument that the plaintiff was precluded from asserting a FMLA claim because she had asked for paid leave only. The court concluded that whether the plaintiff gave adequate notice "is necessarily a question of fact, linked to her illness and its manifestations." *Id.* at 1026. This Court respectfully disagrees that the inquiry should be so limited. The Act provides that the employee may "elect" to substitute paid leave for unpaid FMLA leave. The regulations provide that the employee may "choose" to substitute paid leave for FMLA leave. The Act does not require clairvoyance on the part of the employer. *Satterfield v. Wal–Mart Stores*, 135 F.3d 973, 980 (5th Cir.1998). The Act is not intended to "constitute a trap for employers who fail to divine unspoken (and even unthought) requests for [FMLA] leave." *Paasch v. City of Safety Harbor*, 915 F.Supp. 315, 321 (M.D.Fla.1995), *aff'd*, 78 F.3d 600 (11th Cir. 1996). Following the Seventh Circuit's construction of the Act would require clairvoyance on the part of employers and make the Act a trap for the unwary.

There are significant advantages to an employee not to elect FMLA coverage for an absence. An employer's sick leave policy will often be more liberal than the FMLA's coverage for "serious health conditions" only. Seniority rights may continue to accrue during paid sick leave, but do not accrue during unpaid FMLA leave. See 29 U.S.C.

§ 2614(a). Significantly, "[i]f an employee uses paid leave under circumstances which do not qualify as FMLA leave, the leave will not count against the 12 weeks of FMLA leave to which the employee is entitled." 29 C.F.R. § 825.207(g). If any request for leave is sufficient to trigger FMLA liability, employers would be encouraged to require employees to take paid sick leave that would count against the 12 weeks of leave authorized by the Act. This would be inconsistent with the policy objective of expanding the rights of employees to take leave for serious medial conditions affecting themselves or their family members.

It is clear in this case that the Plaintiff's FMLA claim is an afterthought. *See Paasch,* 915 F.Supp. at 321. The Act is clear. Where the Plaintiff has an option of claiming paid sick leave or FMLA leave, the employee must make an election to be covered by the Act. Such coverage has serious consequences for the employer. The Act should not be interpreted to give every terminated employee the right to retroactively claim that his or her sick leave should be considered FMLA leave, thereby supporting a claim pursuant to the Act's non-discrimination provisions. There is no evidence in this case that the Defendants or the Plaintiff thought that the Plaintiff was exercising her FMLA rights. Accordingly, there can be no claim for damages based upon a violation of the FMLA.

█ The Defendants are entitled to summary judgment as to the Plaintiff's FMLA claim for a second reason. If the Plaintiff exercised her rights under the FMLA to take a leave of absence, she was entitled to be reinstated in her former position. However, before the next school year began, she resigned. This constituted "unequivocal notice of intent not to return to work" and terminated any obligation on the part of the Defendants to restore her to her former position. 29 C.F.R. § 825.309(b); *Paasch,* 915 F.Supp. at 322. It is undisputed that the Plaintiff received the leave that she requested. If she is not entitled to reinstatement at her former position, there is no remaining FMLA claim that can be granted. The Defendants are therefore entitled to

summary judgment on this ground as well with respect to the Plaintiff's FMLA claim. Likewise, the Court concludes that the Plaintiff cannot establish a claim of constructive discharge as she has failed to present evidence that her working conditions as a classroom teacher were "so intolerable that a reasonable person in her position would have been compelled to resign." *Poole v. The Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir.1997).

**B. *ADEA***

█ The ADEA prohibits discrimination against employees in the protected age group on the basis of their age. An ADEA plaintiff bears the burden of showing by a preponderance of the evidence that age was a determining factor in an adverse employment action by her employer. *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1226 (11th Cir. 1993). When a defendant moves for summary judgment, the plaintiff must establish a *prima facie* case of age discrimination. With respect to her ADEA claim, the Plaintiff has not produced any statistical evidence of a pattern of discrimination or any direct evidence of discrimination against her on the basis of age. Therefore, to prevail, she must point to circumstantial evidence that satisfies the burden-shifting *McDonnell Douglas* test. Under this test, the plaintiff has the initial burden of establishing a *prima facie* case of age discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. In an ADEA case involving discharge, demotion, or failure to hire, the plaintiff may satisfy a *prima facie* case by showing (1) that she is a member of a protected group of persons between the ages of 40 and 70; (2) that she was subject to an adverse employment action; (3) that a substantially younger person filled the position that she sought; and (4) that she was qualified to do the job for which she was rejected. *Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1432 (11th Cir. Feb.26, 1998); *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Coutu v. Martin County Bd., of County Commissioners,* 47 F.3d 1068, 1073 (11th Cir.1995).

In this case, it is undisputed that the Plaintiff was born in 1933 and is therefore a

member of the protected group of persons between the ages of 40 and 70. The Plaintiff has presented evidence showing that she was subject to an adverse employment decision, i.e., the reassignment to a teaching position at Brookview. The evidence presented also shows that she was qualified to perform the job of Assistant Principal. Principal Wright testified the Plaintiff was replaced at Oak Knoll by Renay Dixon, who was 39 years old. (Wright Dep. at 91). Therefore, the Plaintiff has presented evidence to show that she was replaced by a substantially younger person. Accordingly, the Court concludes that the Plaintiff has presented evidence sufficient to establish a *prima facie* case of ADEA discrimination.

■ Once the plaintiff establishes her *prima facie* case, a presumption of discrimination arises and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–7, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Clark,* 990 F.2d at 1227. This intermediate burden is merely the burden of production and is very light. *Turnes v. AmSouth Bank, NA,* 36 F.3d 1057, 1060 (11th Cir.1994); *Meeks v. Computer Assoc. Int'l,* 15 F.3d 1013, 1019 (11th Cir.1994). The employer only needs to present admissible evidence sufficient to raise a genuine issue of material fact as to whether there was a legitimate reason for the adverse employment action. *Turnes,* 36 F.3d at 1060.

The Defendants have articulated and presented supporting evidence of legitimate, nondiscriminatory reasons for reassigning the Plaintiff: (1) her ineffective communication skills; (2) inability to work with the Oak Knoll administrative team; and (3) her absenteeism. (Duvall Dep. 30–45; Wright Dep. 71–72, 86). The burden then shifts back to the Plaintiff to show that the proffered reasons are merely pretexts for age discrimination. The Plaintiff, however, has failed to create a genuine issue of fact as to pretext with regard to age discrimination. In her deposition, the Plaintiff initially refused to respond when she was asked to state the basis for her claim of age discrimination.

(Plaintiff's Dep. at 119). Later, she could only say that she thought that her supervisor had been "unfair." (Plaintiff's Dep. at 128). The Plaintiff has failed to meet her burden of rebutting the evidence of the Defendants' legitimate non-discriminatory reasons for the transfer from Oak Knoll to Brookview. Accordingly, the Defendant is entitled to summary judgment as to the Plaintiff's ADEA claim.

### C. ADA and Section 504 Claims

■ Title I of the ADA provides that no covered employer shall discriminate against "a qualified individual with a disability. because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). There is no claim in this case that the plaintiff herself is disabled. However, the ADA also defines "discriminate" to include "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). A family relationship constitutes an example of a "relationship" under this provision of the ADA. 29 C.F.R. § 1630.8.

With respect to her ADA claim, the Plaintiff has not produced any statistical evidence of a pattern of discrimination or any direct evidence of association disability discrimination. Therefore, to prevail, she must point to circumstantial evidence that satisfies the burden-shifting *McDonnell Douglas* test. *See Hartog v. Wasatch Academy,* 129 F.3d 1076, 1085 (10th Cir.1997). Under this test, the plaintiff has the initial burden of establishing a *prima facie* case of ADA association discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Hartog,* 129 F.3d at 1085. To establish a *prima facie* case of ADA association disability discrimination, a plaintiff must prove: (1) she was subjected to an adverse employment action; (2) she was "qualified" for the job at the time of the adverse employment action; (3) she was known by her employer at the time to

have a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. *Hartog,* 129 F.3d at 1085. Section 504 of the Rehabilitation Act provides, in pertinent part, that "[t]he standards used to determine whether this section has been violated ... shall be the standards applied under title I of the [ADA]." 29 U.S.C. § 794(d). Thus, the Court's analysis of the Plaintiff's ADA claim applies with equal force to her Section 504 claim.

 The Plaintiff (or at least her counsel) claims that the Defendants discriminated against her because of her husband's disability. Assuming for the sake of discussion that the Plaintiff's husband suffered from a disability within the meaning of the ADA, the Plaintiff has failed to establish a *prima facie* case of associational disability discrimination. As discussed above, the evidence presented establishes that the Plaintiff was subjected to an adverse employment decision and that she was qualified for the Assistant Principal position at the time of the adverse employment decision. Further, the evidence presented establishes that the Defendants knew that the Plaintiff was caring for her sick husband. Nevertheless, the Court does not find that the reassignment raises a reasonable inference that the husband's disability, as opposed to her inability to work with her Principal and absence from work, was a consideration in the Defendants' decision. In her deposition, the Plaintiff testified as follows:

> Q. Okay. Do you believe that your assignment to Brookview was based on your association with a disabled person?
>
> A. No.
>
> Q. Okay. Do you believe that your removal from Oak Knoll had anything to do with your association with a disabled person?
>
> A. No.
>
> Q. Do you believe that any of the professional development plans that we have talked about at length here today had any-

thing to do with your association with a disabled person?

> A. No.

(Plaintiff's Dep. at 159). This is compelling evidence that there is no genuine issue of fact to be submitted to the jury regarding the Plaintiff's disability claim. In the absence of any genuine issues of material fact, the Court concludes that the Plaintiff has failed to establish her *prima facie* case of associational disability discrimination. Moreover, as discussed above, the Defendants have offered multiple legitimate, nondiscriminatory reasons for reassigning the Plaintiff. The Plaintiff has not come forward with any evidence that the offered reasons were merely pretextual with regard to associational disability discrimination. For this reason as well, the Defendants are therefore entitled to summary judgment with regard to the Plaintiff's ADA and Section 504 claims.

### D. State Claims

The Plaintiff's state law claims are dependent upon her federal claims for violation of the FMLA, ADEA, and ADA. Rather than dismiss the state law claims on the merits, the Court declines to accept supplemental jurisdiction under 28 U.S.C. § 1367 and the state law claims are dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Plaintiff's Motion for Partial Summary Judgment [Doc. No. 24] is DENIED. The Defendants' Motion for Summary Judgment [Doc. No. 22] is GRANTED. The Clerk is directed to enter final judgment in favor of the Defendants and to close this case.