Sharmarie **ROCKY**, Plaintiff,

v.

**COLUMBIA LAWNWOOD REGIONAL MEDICAL CENTER** and **Florida Community Health Care Centers, Inc.,** Defendants.

No. 98–8220–CIV.

United States District Court, S.D. Florida.

July 2, 1999.

Robert A. Bogan, Pompano Beach, Florida, for plaintiff.

Rachel F. Alters, McGrane & Nosich, P.A., Coral Gables, Florida, for defendant Florida Community Health Care Centers, Inc.

Alexander D. del Russo, Levy, Kneen, Mariani, Curtin, Weiner, Kornfeld & Del Russo, P.A., West Palm Beach, Florida, for defendant Columbia Lawnwood Regional Medical Center.

## FINAL SUMMARY JUDGMENT AS TO COLUMBIA LAWNWOOD REGIONAL MEDICAL CENTER

ZLOCH, District Judge.

THIS MATTER is before the Court upon the Defendant, Columbia Lawnwood Regional Medical Center, Inc.'s Motion For Summary Judgment (DE 23). The

Court has carefully considered the merits of said Motion and the entire court file herein, and is otherwise fully advised in the premises.

The Plaintiff, Sharmarie Rocky, commenced the instant action seeking damages and injunctive relief against the Defendant, Columbia Lawnwood Regional Medical Center, Inc. (hereinafter "Lawnwood"), pursuant to the Americans With Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12101 *et seq.*, the Family Medical Leave Act (hereinafter "FMLA"), 29 U.S.C. § 2601 *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 (hereinafter "Title VII"), 42 U.S.C. § 2000e *et seq.* Specifically, the Plaintiff alleges that she was employed by the Defendant, Lawnwood, who discriminated and retaliated against her because of her association with her son who has a disability, in violation of the ADA. The Plaintiff also alleges that the Defendant discriminated against her in violation of FMLA. The Court notes that the Plaintiff has voluntarily dismissed Counts V and VII of her Complaint which allege violations of Title VII. The Defendant Lawnwood has denied the Plaintiff's allegations and has raised a number of affirmative defenses.

In October 1995, the Plaintiff began her employment with Lawnwood as a part-time transporter. When she began her employment, the Plaintiff received and agreed to read Lawnwood's Employee Handbook. The Employee Handbook states that because of the urgent nature of hospital work, Lawnwood requires regular attendance and as much notice as practicable when an employee needs to be absent. The Employee Handbook also states that frequent absences or tardiness may result in disciplinary action and employment termination.

In 1996, the Plaintiff was transferred to a full-time position as a Unit Secretary in the Emergency Services Department where she worked until she was discharged on or about late May or early June 1997. As a Unit Secretary, the Plaintiff's duties included retrieving patient specimens and delivering them to the lab, stocking supplies, cleaning the area, running errands for physicians, and placing orders in the computer.

At the time of her transfer to the Unit Secretary position, the Plaintiff claims that her supervisor, Debbie Boyer, stated that Lawnwood would "work with" her when she needed to take time off to care for her son's medical condition. The Plaintiff, however, has failed to provide any documentation that any specific absence or tardiness was cause by her son's medical condition. The Plaintiff also has failed to provide any documentation that she gave Lawnwood any advanced notice of the absences or tardiness she claims were caused by her son's medical condition.

It is clear from the Plaintiff's own deposition, the affidavits of her supervisors, her attendance records, and the numerous notices of corrective action, that the Plaintiff was frequently absent from work and often disciplined for such absences. Specifically, on January 20, 1997, Ms. Boyer verbally warned the Plaintiff that the Plaintiff's personal phone calls at work, tardiness, and overall decrease in productivity, if continued, would lead to the Plaintiff's termination. The Defendant documented this verbal warning as a corrective action notice.

On February 19, 1997, Ms. Boyer issued the Plaintiff a corrective action notice for being late three times in one pay period. The notice warned the Plaintiff that if she continued to be tardy, she would be suspended and discharged.

On February 28, 1997, the charge nurse, Steve Rogers, issued the Plaintiff a written corrective action notice and suspended the Plaintiff for two-days because she had left her position to conduct personal business off the hospital premises without clocking out or informing the charge nurse. The February 28, 1997 notice again expressly warned the Plaintiff that

further misconduct would result in her employment termination. On February 28, 1997, Mr. Rogers also counseled the Plaintiff for performance-related problems, including excessive personal phone calls, conducting personal business while at work, and failing to perform her job duties.

On or about March 3, 1997, Ms. Boyer issued the Plaintiff another corrective action notice and suspended the Plaintiff for two days for being twenty minutes late to work on February 17, 1997, and one-and-one-half hours late to work on February 24, 1997. The March 3, 1997 notice again warned the Plaintiff that continued tardiness would lead to her termination.

After March 3, 1997, Ms. Boyer was unable to document the Plaintiff's tardiness because the Plaintiff had stopped using her time card. The Plaintiff did not begin re-using her time card until a few days before the Defendant terminated her employment in May or June 1997.

On April 15, 1997, Ms. Boyer issued the Plaintiff a fifth notice of corrective action because the Plaintiff had been excessively absent and had called in absent with less than three hours notice, in violation of Lawnwood's written absentee policy. This notice again warned the Plaintiff that continued absences or late call-ins would lead to her employment termination.

In late May 1997, the Plaintiff sent a letter, erroneously dated May 1, 1997, to Richard Scott, CEO of Columbia HCA Healthcare Corporation (Rocky Depo. pp. 111, 131). A few days after the Plaintiff sent this letter to Mr. Scott, the Plaintiff placed copies of the letter under the doors of Ms. Boyer and Mr. Reid Johnson, the Director of Nursing (Rocky Depo. pp. 111–12). The Court notes that although this letter forms the sole basis for the Plaintiff's ADA retaliation claim, the Plaintiff has failed to attach a copy of this letter to any of her pleadings, or otherwise provide a copy for the Court's consideration.

On May 29, 1997, Ms. Boyer and Reid Johnson, the Director of Nursing at Lawnwood, jointly recommended that the Plaintiff's employment be terminated. At the request of Gary Cantrell, the CEO of Lawnwood, David Riley, Director of Human Resources, investigated the events preceding Ms. Boyer and Mr. Johnson's adverse recommendation. Upon completing this investigation, Mr. Cantrell accepted Mr. Riley, Ms. Boyer, and Mr. Johnson's conclusions and informed the Plaintiff of the reasons for her termination by letter dated June 6, 1997. The June 6, 1997 letter specifically enumerates the Plaintiff's employee misconduct, including excessive tardiness and absences, conducting personal business while at work, making personal phone calls, failing to perform her job duties, leaving the facility for more than thirty minutes without clocking out, and calling in absent with less than three hours notice. The June 6, 1997 letter further notes that the Plaintiff had failed to contact Human Resources regarding her requested family medical leave, despite having been instructed to do so.

In the instant Motion (DE 23), the Defendant, Lawnwood, asserts that it did not discriminate against the Plaintiff in violation of the ADA or FMLA. The Defendant argues that it is entitled to judgment as a matter of law because the Plaintiff has failed to establish a prima facie case of discrimination under either FMLA or the ADA, and has failed to show pretext as to her ADA retaliation claim.

### SUMMARY JUDGMENT

Under Rule 56(c), Fed.R.Civ.P., summary judgment is proper

"if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c).

The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

To summarize, the moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

The moving party is entitled to "judgment as a matter of law" when the nonmoving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Everett v. Napper,* 833 F.2d 1507 (11th Cir.1987). The standard for granting summary judgment is the same as the standard for granting a directed verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Appellate Courts generally, therefore, will affirm the granting of summary judgment if on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury. *Anderson,* 477 U.S. at 252–256, 106 S.Ct. 2505; *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607 (11th Cir.1987). The evidence of the non-movant is to be believed, however, and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Barnes,* 814 F.2d at 609; *Borg–Warner Acceptance Corp. v. Davis,* 804 F.2d 1580 (11th Cir.1986).

Nevertheless, where the moving party properly supports the motion for summary judgment, "the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must, through affidavits or as otherwise provided in Fed. R.Civ.P. 56, 'designate "specific facts showing that there is a genuine issue for trial." ' " *L.S.T., Inc. v. Crow,* 49 F.3d 679, 684 (11th Cir.1995) (citations omitted).

### ADA ASSOCIATIONAL DISCRIMINATION CLAIM

The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.,* provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "discriminate" includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). A familial association is an example of a protected relationship under the associational provision of the ADA. *Den Hartog v. Wasatch Academy,* 129 F.3d 1076, 1082 (10th Cir.1997); *Hilburn v. Murata Electronics N. Am.,* 17 F.Supp.2d 1377, 1383 (N.D.Ga. 1998); 29 C.F.R. § 1630.8.

■ The Court notes that the associational provision of the ADA is a rather new and undeveloped provision, and that the Eleventh Circuit has not yet addressed this type of claim. A plain reading of the statute, however, indicates that the protection afforded to nondisabled employees pursuant to the associational provision of

the ADA differs from that afforded to employees who suffer discrimination because of their own disabilities. One such difference is the definition of a "qualified individual." The ADA defines a qualified individual as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions" of the job she holds. 42 U.S.C. § 12111(8). Therefore, in a claim where an employee alleges discrimination based on her own disability, the Court's inquiry is two-fold. *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1123 (10th Cir.1995). First, the Court must determine whether the Plaintiff is able to perform the essential functions of her job, that is, the functions that bear more than a marginal relationship to the job at issue. *Id.;* 29 C.F.R. § 1630.2(n). Second, if the Plaintiff is unable to so perform, the Court must determine if, with reasonable accommodation, the Plaintiff would be able to perform such functions. *Milton,* 53 F.3d at 1123.

■ In contrast, the associational provision of the ADA does not require employers to make any "reasonable accommodation" for the disabilities of relatives or associates of a nondisabled employee. *Hilburn,* 17 F.Supp.2d at 1384 (citing *Den Hartog,* 129 F.3d at 1084); *see also* 42 U.S.C. § 12112(b)(5)(A) and (B); 29 C.F.R. pt. 1630.8 app. at 349; H.R.Rep. No. 101–485, pt. 2, at 61–62 (1990). Because the ADA does not require employers to accommodate nondisabled employees, a "qualified individual," as used in the associational provision of the ADA, is an individual who can "perform the essential functions of the employment position that such individual holds or desires" without regard to the availability of any accommodation.

The following examples from the legislative history of the instant associational provision illustrate the extent of protection provided to nondisabled employees:

[A]ssume, for example, that an applicant applies for a job and discloses to the employer that his or her spouse has a disability. The employer believes the applicant is qualified for the job. The employer, however, assuming without foundation, that the applicant will have to miss work or frequently leave work early or both, in order to care for his or her spouse, declines to hire the individual for such reasons. Such refusal is prohibited. . . .

In contrast, assume that the employer hires the applicant. If he or she violates a neutral employer policy concerning attendance or tardiness, he or she may be dismissed even if the reason for the absence or tardiness is to care for the spouse. The employer need not provide any accommodation to the nondisabled employee.

H.R.Rep. No. 101–485, pt.2, at 61–62. These examples demonstrate that the purpose of the associational provision is to prevent an employer from making an unfounded assumption that an employee who has an association with a disabled person will miss work in order to care for that person. The associational provision, however, does not impose an affirmative duty upon the employer to provide any accommodation to a nondisabled employee.

At the outset, the Court notes that the Plaintiff is attempting to meet her prima facie case of ADA associational discrimination by showing circumstantial evidence of discriminatory intent. Therefore, it is appropriate for the Court to apply the burden-shifting indirect method of proof to this associational ADA discrimination claim, as articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Under the *McDonnell Douglas* approach, the Plaintiff must first establish a prima facie case of ADA associational discrimination. If the Plaintiff cannot do so, the Defendant need not present any reason for its action and the Court must determine if the Plaintiff has met her burden. *Hawkins v. Ceco Corp.,* 883 F.2d 977 (11th Cir.1989). If the Plaintiff cannot meet her burden of establishing each ele-

ment of her prima facie case, the Court must find in favor of the Defendant.

If the Plaintiff successfully establishes a prima facie case of discrimination, the burden shifts to the Defendant to show a non-discriminatory reason for the challenged employment action. This is not a burden of proof or persuasion, but is more appropriately called a burden of production. If the Defendant fails to rebut the Plaintiff's prima facie case, then the Plaintiff has prevailed and need not proceed with an additional showing.

If the Defendant can offer a legitimate, non-discriminatory reason, the burden then shifts back to the Plaintiff to prove, by a preponderance of the evidence, that discriminatory intent motivated the employer's action. The Plaintiff may show such discriminatory intent by demonstrating that the employer's proffered explanation is pretextual, or alternatively, by directly demonstrating that a discriminatory reason more likely motivated the employer's action. Despite this shifting burden analysis, the ultimate burden of proof remains on the Plaintiff throughout. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Therefore, the Plaintiff must first establish a prima facie case of associational disability discrimination by establishing each of the following elements by a preponderance of the evidence: (1) that the Plaintiff was qualified for the job at the time of the adverse employment action; (2) that she was subjected to an adverse employment action; (3) that she was known by her employer at the time to have a relative or associate with a disability; and, (4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. *Den Hartog*, 129 F.3d at 1085; *Walthall v. Fulton County Sch. Dist.*, 18 F.Supp.2d 1378, 1387–88 (N.D.Ga.1998); *Hilburn*, 17 F.Supp.2d at 1383. As to the second ele-

ment, there is no genuine issue that the Plaintiff suffered an adverse employment action. As to the third element, there is no genuine issue that the Defendant knew at the time of the adverse employment action that the Plaintiff was associated with her son who has a disability as defined in the ADA.

■ The Plaintiff, however, also bears the burden of proving the remaining elements of her prima facie case. As to the first element, the Court finds that the Plaintiff has failed to establish by a preponderance of the evidence that she was qualified for her position at the time of the adverse employment action. The Court notes that if the nature of an employee's position requires her to regularly and reliably attend work, and she fails to meet that requirement, then she is not qualified for her job. *Jackson v. Veterans Admin.*, 22 F.3d 277, 278–79 (11th Cir.1994) (Rehabilitation Act); *Hilburn*, 17 F.Supp.2d at 1384; *Tyndall v. National Educ. Ctrs. Inc. of California*, 31 F.3d 209, 212–13 (4th Cir.1994).

Here, the nature of the Plaintiff's job as a Unit Secretary required her to regularly be present in the Emergency Services Department. Specifically, the Plaintiff's job duties included retrieving patient specimens, stocking supplies, cleaning the area, running errands for physicians, and imputing orders on the computer. Such duties required the Plaintiff's presence at the hospital. Also, because of the urgent nature of hospital work, Lawnwood requires regular attendance, and further requires employees to give as much notice as possible for a needed absence. The Employee Handbook emphasizes the necessity of attendance by warning that frequent absences or tardiness may result in disciplinary action and termination. Despite these clearly articulated job requirements, the Plaintiff's own deposition, corrective action notices, and attendance records all show that the Plaintiff repeatedly failed to regularly and punctually attend work.

The Court notes that even if the Plaintiff's need to care for her son were the reason that she was absent or tardy, the ADA does not require the Defendant to accommodate that need. *Hilburn,* 17 F.Supp.2d at 1384 (quoting *Den Hartog,* 129 F.3d at 1083). The Court notes that the facts of this case are similar to the situation contemplated by Congress when it enacted the associational provision of the ADA. As the above-quoted examples from the legislative history provide, if an employee "violates a neutral employer policy concerning attendance or tardiness, he or she may be dismissed even if the reason for the absence or tardiness is to care for" a son with a disability. H.R.Rep. No. 101–485, pt. 2, at 61–62. In short, the Plaintiff has failed to set forth evidence that she was qualified for her job because she has failed to satisfy the presence requirement of her job as a Unit Secretary in the Emergency Services Department. *Jackson,* 22 F.3d at 279. Accordingly, the Court finds that the Plaintiff has failed to establish a necessary element of her prima facie case.

■ In addition, the Court also finds that the Plaintiff has failed to establish the fourth element of her prima facie case. The Plaintiff also has the burden of showing that the "adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." *Den Hartog,* 129 F.3d at 1085; *Walthall,* 18 F.Supp.2d at 1387–88; *Hilburn,* 17 F.Supp.2d at 1383.

To meet her burden as to the fourth element, the Plaintiff asserts that, approximately five months prior to her discharge, Ms. Boyer told her that she would be discharged if the Plaintiff continued to take time off to care for her son. As the ADA does not require the Defendant to accommodate the needs of the Plaintiff's son, this statement merely provides the Plaintiff with warning that if she continued to violate the Defendant's neutral attendance policy, she would be discharged. Based on this evidence, the Court finds that the circumstances of the Plaintiff's termination do not raise a reasonable inference that her son's disability was a determining factor in the Defendant's employment decisions.

■ Even assuming, arguendo, that the Plaintiff has established each element of her prima facie case of ADA associational discrimination, the Court finds that the Defendant has presented a legitimate, non-discriminatory reason for the Plaintiff's employment termination. The Defendant has asserted that it terminated the Plaintiff's employment because she was excessively tardy and absent, and because of other performance-related deficiencies.

Because the Defendant has met its burden of proffering a legitimate, non-discriminatory reason, the Plaintiff now must show that the Defendant's reason for terminating her employment is pretextual. The Court notes that the Plaintiff must present "significant probative" evidence of pretext to avoid summary judgment. *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir.1996) (citations omitted). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered ... extensive evidence of legitimate, non-discriminatory reasons for its action." *Id.* (citations omitted).

As evidence of pretext, the Plaintiff first asserts that the Defendant was aware of her need to take more time off and did not require perfect attendance. The Defendant, however, maintains that it does *not* require perfect attendance, only, at a minimum, *regular* attendance and punctuality. As the numerous corrective action notices and attendance records demonstrated, the Plaintiff clearly failed to meet such requirements.

Second, the Plaintiff asserts that some of the absences and tardiness incidents had been explained or excused. The

Court notes that the Plaintiff has failed to file documentation which might controvert the Defendant's numerous notices of corrective action and which might support such a conclusory claim. Moreover, even if some of the absences and tardiness were explained or excused, the issue is not whether the Defendant was correct in its belief that the Plaintiff's job performance was inadequate, but rather whether the Defendant had a good faith reason for its belief. *Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207; *Moore v. Sears, Roebuck Co.,* 683 F.2d 1321, 1323 n. 4 (11th Cir.1982).

Third, the Plaintiff argues that she received two excellent employment evaluations. The Plaintiff, however, does not allege that such evaluations were given at or near the time of her termination. Thus, such evaluations do not support the Plaintiff's assertion that her job performance was adequate at the relevant time, namely when the Defendant made its employment decision. *Fortier v. Ameritech Mobile Communications, Inc.,* 161 F.3d 1106, 1113 (7th Cir.1998).

Fourth, the Plaintiff asserts that Ms. Boyer told her that she would be terminated if she continued to take time off to care for her son. Such a reason for termination, however, is not discriminatory because the ADA does not require a Defendant to accommodate the needs of the Plaintiff's son. Based on the foregoing evidence, the Court finds that the Plaintiff has failed offer sufficient evidence from which a reasonable jury could find that the Defendant's legitimate, nondiscriminatory reasons are pretextual or that the Defendant discriminated against the Plaintiff because of her association with her son.

Upon careful review of the entire Court file herein, the Court finds that the Defendant, Lawnwood, has successfully carried its burden of setting forth facts in its pleadings, supporting affidavits, and exhibits which indicate that there is no genuine issue of material fact, and that the Defendant is entitled to judgment as a matter of law as to the Plaintiff's associational disability discrimination claim.

## ADA RETALIATION CLAIM

The Plaintiff also alleges that the Defendant retaliated against her for writing the May 1, 1997 letter to Richard Scott. The ADA prohibits an employer from discriminating against an employee "because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge ... under [the ADA]." 42 U.S.C. § 12203(a).

At the outset, the Court notes that the Plaintiff is relying solely on circumstantial evidence of discriminatory intent to prove her ADA retaliation claim. Therefore, it is appropriate for the Court to apply the now-familiar burden-shifting indirect method of proof to this ADA retaliation claim, as articulated in *McDonnell Douglas Corp.,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. *McNely v. Ocala Star–Banner Corp.,* 99 F.3d 1068, 1075–77 (11th Cir.1996).

■■■ To establish a prima facie case of retaliation under the ADA, the Plaintiff must prove each of the following elements: (1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse employment action. *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1328 (11th Cir.1998). If the Plaintiff establishes a prima facie case, the burden shifts to the Defendant employer to come forward with a legitimate, nondiscriminatory reason for the action that negates the inference of discrimination. *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir.1997) (citation omitted). The Plaintiff must then demonstrate that the employer's proffered nondiscriminatory reason is pretextual. *Id.*

In the instant case, the Plaintiff's ADA retaliation claim is based solely on the May 1, 1997 letter to Mr. Scott, which she gave

to Ms. Boyer and Mr. Johnson a few days prior to her discharge. The Court again notes that the Plaintiff has failed to submit a copy of this letter upon which she relies to support her retaliation claim.

■ In its Motion For Summary Judgment (DE 23), the Defendant seems to concede that the Plaintiff has established a prima facie case of retaliation under the ADA. The Defendant, however, argues that it has proffered a legitimate, nondiscriminatory reason for its actions. The Defendant asserts that it terminated the Plaintiff's employment because she was excessively absent and tardy, and because of other performance-related deficiencies. The Court notes that over the six-month period preceding her termination, the Plaintiff received five separate notices of corrective action warning her that continued misconduct would result in her employment termination. Based on this evidence, the Court finds that the Defendant has advanced a legitimate, non-discriminatory reason for terminating the Plaintiff's employment.

As the Defendant has proffered a legitimate, nondiscriminatory reason, the Plaintiff must now offer evidence of pretext. The Court notes that the Plaintiff has made the same arguments regarding pretext as to her ADA retaliation claim as she has regarding her ADA associational discrimination claim. The Court finds that, just as with her ADA associational discrimination claim, the Plaintiff has failed to show that the Defendant's proffered reasons are pretextual.

The Court also finds that although the letter dated May 1, 1997 was temporally close to the Plaintiff's termination, this curious timing alone does not raise an inference of pretext in light of the circumstances surrounding that letter. Specifically, the Defendant issued numerous warnings to the Plaintiff over a six-month period preceding her discharge. The Plaintiff's dismissal simply completed the disciplinary process already set in motion. Accordingly, the Court finds that the Plaintiff has failed to offer sufficient evidence showing that the Defendant's legitimate, non-discriminatory reason is pretextual or that the Defendant retaliated against her based on the subject letter.

Upon careful review of the Court file herein, the Court finds that the Defendant, Lawnwood, has successfully carried its burden of setting forth facts in its pleadings, supporting affidavits, and exhibits, which indicate that there is no genuine issue of material fact, and that the Defendant is entitled to judgment as a matter of law as to the Plaintiff's ADA retaliation claim.

## FMLA CLAIM

In Count III of her Complaint (DE 1), the Plaintiff makes a bare allegation that Lawnwood discriminated against her in violation of FMLA when it suspended and terminated her employment. FMLA allows eligible employees to take a maximum of 12 workweeks during any 12–month period to care for that employee's spouse, son, daughter, or parent who has a serious health condition. 29 U.S.C. § 2612(a)(1)(C). FMLA prohibits employers from discharging or in any other manner discriminating against an employee for opposing any practice made unlawful by FMLA. 29 U.S.C. § 2615(a)(2).

At the outset, the Court notes that the Plaintiff is attempting to prove her case of FMLA discrimination by circumstantial evidence of discriminatory intent. Therefore, it again is appropriate for the Court to apply the *McDonnell Douglas* analysis to the Plaintiff's FMLA claim. *Cross v. Southwest Recreational Inds., Inc.,* 17 F.Supp.2d 1362, 1370 (N.D.Ga.1998); *Dollar v. Shoney's, Inc.,* 981 F.Supp. 1417, 1419 (N.D.Ala.1997); *Kaylor v. Fannin Reg'l Hosp., Inc.,* 946 F.Supp. 988, 999 (N.D.Ga.1996); S.Rep. 103–3 at 34.

■ To establish a prima facie case of FMLA discrimination, the Plaintiff must establish each of the following elements: (1) that she availed herself of her FMLA

rights; (2) that she suffered an adverse employment action; and (3) that a causal link exists between the two elements. *Cross*, 17 F.Supp.2d at 1371; *Dollar*, 981 F.Supp. at 1420 (citing *Morgan v. Hilti*, 108 F.3d 1319, 1325 (10th Cir.1997)).

As to the first element, in order for the Plaintiff to avail herself of her FMLA rights, the Plaintiff must comply with FMLA's notice requirements. These notice requirements are one way in which Congress has attempted to "balance the demands of the workplace with the needs of families" and "entitle employees to take *reasonable* leave for medical reasons." 29 U.S.C. § 2601(b)(1) & (2) (emphasis added). The Court notes that these notice requirements differ depending on whether the need for leave is foreseeable or unforeseeable. If the needed leave is foreseeable, an employee must give an employer at least thirty days notice of her intent to take such leave. 29 U.S.C. § 2612(e)(2)(B). If thirty days notice is not practicable, the employee must give notice as soon as practicable. *Id.* The notice must state the anticipated timing and duration of the leave, and must be "sufficient to make an employer aware that the employee needs FMLA-qualifying leave." 29 C.F.R. § 825.302(c).

FMLA is silent regarding the notice required for unforeseeable leave. The Code of Federal Regulations, however, provides that if the need for leave is unforeseeable, an employee must notify an employer of that need as soon as practicable, and is expected to notify the "employer within one to two business days of learning of the need for leave, except in extraordinary circumstance where such notice is not feasible." 29 C.F.R. § 825.303(a). If the need is unforeseeable, "the employee need only provide her employer with notice sufficient to make her employer aware that her absence is due to a potentially FMLA-qualifying reason." *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir.1997). The employee, however, need not mention that such leave is requested pursuant to FMLA. 29 C.F.R. § 825.303(b).

If an employee needs to take intermittent leave under FMLA, the employee must satisfy certain conditions. Specifically, the leave must be medically necessary for a serious health condition. 29 U.S.C. § 2612(b)(1). The employee also must make a reasonable effort to schedule treatment so as to not "disrupt unduly the operations of the employer," and must give the employer at least thirty days notice of the need for leave. 29 U.S.C. § 2612(e)(2)(A) & (B).

In an attempt to satisfy these notice requirements, the Plaintiff relies on an understanding with Ms. Boyer that the Defendant would "work with" the Plaintiff regarding the Plaintiff's need to take time off to care for her son (Rocky Depo. pp. 47–48). The Plaintiff asserts that she interpreted such understanding to mean that she had unlimited permission to be late to or absent from work at any time and for any length of time in order to care for her son (Rocky Depo. pp. 49–50). The Court finds that regardless of the Plaintiff's subjective beliefs, no rational jury could conclude that the Plaintiff had received the Defendant's permission to be absent or tardy whenever and as often as she desired. Therefore, the Court finds that the Plaintiff has failed to satisfy any of FMLA notice requirements based on this alleged understanding.

The Plaintiff also asserts that she specifically told Ms. Boyer that she was exercising her FMLA rights and was using her leave due to family medical emergencies (Rocky Affidavit ¶ 26). The Plaintiff, however, does not state when she made this specific statement nor to which family emergencies this statement referred. The Plaintiff also generally asserts that she always gave as much notice as possible (Rocky Affidavit ¶ 27). Beyond these conclusory assertions, the record is devoid of any specific evidence that the Plaintiff gave the required notice on the numerous occasions when she was absent or tardy. In the absence of such required notifica-

tion, the Plaintiff may not subsequently assert FMLA protections for her absences. 29 C.F.R. § 825.208(e)(1). Accordingly, the Court finds that the Plaintiff has fail to satisfy her burden of showing that she gave the Defendant the required FMLA notice regarding family medical leave for her son. Based on the foregoing evidence, the Court finds that the Plaintiff has failed to establish a necessary element of her prima facie case, namely that she availed herself of her FMLA rights.

Even assuming the Plaintiff has established each element of her prima facie case of FMLA discrimination, the Court finds that the Defendant has offered a legitimate, nondiscriminatory reason for terminating the Plaintiff's employment. The Defendant asserts that it terminated the Plaintiff's employment because of her excessive absences and tardiness. Based on the exhibits and affidavits that the Defendant has submitted in support of its Motion, the Court finds that the Defendant has carried its burden of proffering a legitimate, nondiscriminatory reason for its action. Therefore, the Plaintiff must show that the asserted reason was not the true reasons for the Defendant's actions. *Dollar*, 981 F.Supp. at 1422 (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997)).

██ As evidence of pretext, the Plaintiff asserts that Ms. Boyer was aware of her son's medical problems and their impact on the Plaintiff's attendance. The Court notes that the fact that Ms. Boyer participated in both hiring and terminating the Plaintiff, creates a permissible inference that no discriminatory intent motivated the Defendant's employment decision. *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1443 (11th Cir.1998). Ms. Boyer also was only one of four individuals involved in the decision to terminate the Plaintiff. Mr. Cantrell made the ultimate decision only after a separate investigation and based on throughly documented reasons.

Also as evidence of pretext, the Plaintiff asserts that sometime prior to January 20, 1997, Ms. Boyer told the Plaintiff that if she did not stop taking time off to care for her son she would be fired. The Plaintiff further alleges that Ms. Boyer told her that everyone would like to take time of to care for one's family, but that was not acceptable (Rocky Depo. pp. 65–66). The Court finds that these isolated statements which Ms. Boyer allegedly made five months prior to the Plaintiff's job termination are too remote and ambiguous to raise an inference of pretext. The Court also notes that Mr. Cantrell, not Ms. Boyer, decided to terminate the Plaintiff based on a joint recommendation and only after a separate investigation. Moreover, Mr. Cantrell made this decision only after Mr. Riley's investigation revealed that the Plaintiff never was disciplined for an absence or tardiness involving her son.

Aside from these statements, the Plaintiff simply has offered only conclusory allegations that the Defendant's employment decisions were based on her availing herself of her FMLA rights. The Court adheres to the instructions of the Eleventh Circuit Court of Appeals which state that "conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered . . . extensive evidence of a legitimate, nondiscriminatory reason for its action." *Young v. General Foods Corp.*, 840 F.2d 825, 830 (11th Cir.1988) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir.1987)). There is nothing in the record from which the Court could make a finding that the actions the Defendant, Lawnwood, took were merely pretextual, or were motivated by the intent to discriminate or retaliate against the Plaintiff in violation of FLMA. Based on the foregoing evidence, the Court finds that the Plaintiff has failed to raise an inference of pretext or intentional discrimination where, as here, the Defendant has offered voluminous evidence of a legitimate, nondiscriminatory reason for its employment decision.

Upon careful review of the entire Court file herein, the Court finds that the Defendant, Lawnwood, has successfully carried its burden of setting forth facts in its

**1172**

pleadings, supporting affidavits, and exhibits which indicate that there is no genuine issue of material fact, and that the Defendant, Lawnwood, is entitled to judgment as a matter of law as to the Plaintiff's FMLA claim.

Accordingly, after due consideration, it is

**ADJUDGED** that the Defendant, Lawnwood's Motion For Summary Judgment (DE 23) be and the same is hereby **GRANTED** as follows:

1. Final Summary Judgment is hereby entered in favor of the Defendant, Columbia Lawnwood Regional Medical Center, and against the Plaintiff, Sharmarie Rocky. The Plaintiff shall take nothing from this action as to the Defendant, Columbia Lawnwood Regional Medical Center, and said Defendant shall go hence without day; and

2. To the extent not otherwise disposed of herein, all pending motions are hereby **DENIED** as moot.